J-S05011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN THOMAS PARKER | : | |
| | : | |
| Appellant | : | No. 490 WDA 2017 |

Appeal from the PCRA Order March 8, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000275-2014,
CP-02-CR-0006793-2013, CP-02-CR-0009422-2013,
CP-02-CR-0009423-2013, CP-02-CR-0010886-2013

BEFORE:   OLSON, J., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 27, 2018**

Appellant, John Thomas Parker, appeals from the order entered on March 8, 2017, dismissing his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546.  We affirm.

On January 22, 2015, Appellant pleaded guilty but mentally ill "to more than a dozen criminal offenses, including three counts of defiant trespass, three counts of intimidation of witnesses or victims, two counts of terroristic threats, and one count of harassment."  ***Commonwealth v. Parker***, 159 A.3d 33 (Pa. Super. 2016) (unpublished memorandum) at 1-2 (internal capitalization omitted).

During the guilty plea hearing, Appellant admitted to the following:

> At [docket number] 201306793, [Appellant was] charged . . . with defiant trespass. . . .

_____
*   Retired Senior Judge assigned to the Superior Court.

[A]t that case[,] the Commonwealth would have called Sergeant Bandik, as well as Detective Topolnak, [] victim [S.P.,] and [S.P.'s] niece[, M.S.].

Testimony would have been that officers were called on May 2, 2013, to [S.P.'s apartment in West Mifflin, Pennsylvania]. . . . They were reported that [Appellant] was seen entering [the apartment] by an anonymous caller. They responded to that location.

When they got there, they were met by [M.S.]. She indicated that she was the niece of the owner, [S.P.]. The officers told her that through an anonymous caller [Appellant] was seen going into that residence.

It should be noted [that] on September 2, 2012, [Appellant] was arrested for defiant trespass at that location, was told not to be on [the apartment] property or to go to that specific location.

The witness, [M.S.], gave them permission to go in and search the property. And the officers found [Appellant] hiding in a closet underneath some clothing and took him into custody.

And that would be the sum and substance of that case.

. . .

So at [docket number] 201309422, [Appellant was] charged [with criminal trespass, defiant trespass, and criminal mischief]. . . .

The Commonwealth would again call Sergeant Bandik, again victim [S.P.], as well as witness [M.S.], and witnesses from [the apartment] management.

The testimony would have been on or about May 27, 2013, officers were called for a burglary report. The victim [S.P.] indicated that [Appellant,] her estranged husband[,] broke into her apartment. . . . She indicated she was at her mother's apartment.

When she and her niece went over to [S.P.'s] apartment[], she said when [M.S.] entered the front door she noticed that the rear door was open. The rear door had been secured with screws by maintenance earlier in the day because the door had been broken and she indicated [Appellant] must have removed the screws secured by the door.

[M.S.] indicated that she found some of her clothes had been cut up and destroyed and that her damaged clothes were worth somewhere in the neighborhood of $100.

They did not see [Appellant] at that time, but they found notes handwritten by him all over the apartment. The notes were not in the apartment when they left earlier, but the notes were there when they returned and were in [Appellant's] handwriting and they recognized his handwriting. The notes were to their children. [Appellant] had been also given notice that he was not to be on the property because he was banned from the property as previously stated. That would be the sum and substance of the Commonwealth's case.

. . .

[At docket number] 201309423, [Appellant was] . . . charged with [criminal trespass, defiant trespass, and criminal mischief]. . . .

Had the Commonwealth proceeded at that case we would have called Lieutenant Savage, as well as victim [S.P.] and witness [M.S.]. The testimony would have been on May 27th, both [S.P.] and [M.S.] were in their residence . . . when they heard a loud noise in the back.

They saw that someone was trying to get into the apartment. They saw it was [Appellant] who again was known not to be on the property. He was a defiant trespasser to the [] premise. He was trying to push the door open until [M.S.] yelled for [S.P.] to get security.

[Appellant] took off out of the property and both girls ran to the security booth where they waited for responding officers. [Appellant] was at the residence and left behind

his wristwatch and cell phone outside of the apartment where he was trying to get in. [S.P.] identified these items as belonging to [Appellant].

When the officers cleared the residence two hours later, they went back into the apartment. The back door of the apartment had been damaged and the back door was not able to be used.

It should be noted that this case actually happened first in time before the previous cases that I read the summary to, which is why the door had to be screwed shut on the previous case.

[M.S.] heard someone inside and heard the click of a switchblade-like device. She indicated that [Appellant] was inside the home again. She discovered he had cut up her tennis shoes which were valued at approximately $50. They had to call security in order for the door to be fixed.

The police tried to get in touch with [Appellant]. He made contact with the police and indicated something about them having a cell phone, but the officer never mentioned to him about leaving behind a cell phone. And he made up a story to the officer about giving his cell phone to a different individual who left it behind.

. . .

At [docket number] 201310886, [the Commonwealth charged Appellant with two counts of intimidation of a witness or victim and two counts of terroristic threats]. . . .

Had the Commonwealth proceeded at that case, we would have called Lieutenant Savage again from West Mifflin, as well as victim [S.P.], victim [M.S.], victim [B.D.], and victim [B.A.].

Testimony would have been that on or about July 18th Lieutenant Savage received a complaint from [S.P.] and her mother [B.D.] concerning some threats made by [Appellant] against them. It should be noted that from [B.D.], they learned of these threats through a mutual friend, [B.A.].

- 4 -

[B.A.] received a letter in the mail from [Appellant]. He indicated in his letter references of his arrest and vowed to wage revenge for those responsible for putting him in jail.

He specifically named [S.P.], [B.D.], [M.S.], as well as [B.A.]. The letter was dated July 14th and was received on July 16th.

He indicated as soon as he gets released from jail, he was going to murder [S.A.], [M.S.], and [B.D.]. He wrote that [B.A.] needs to tell [S.P.] about the threats and he's not bluffing. He rambled on about the harm he's going to do and she can try to get a PFA, but it will be useless because he'll shoot her in the head.

He made references about [S.P.] being a rat for testifying against him. He also referenced that he knows where everyone lives and his shooters will execute them with no mercy at all. They all took the threats very seriously and were concerned for their personal safety.

The officer got copies of the letters she received and [B.A.] was also concerned for her safety as well as the safety of her family. That would be the sum and substance of the Commonwealth.

. . .

Finally at [docket number] 201400275, [the Commonwealth charged Appellant with intimidation of a witness or victim and harassment]. . . .

Had the Commonwealth proceeded, we would have called Officer Savage again and victim [B.D.] who would have testified on December 11, 2013 that Officer Savage was contacted again by [B.D] concerning an intimidation letter she received from [Appellant]. The letter was in her mail that day. There was writing on the back of the envelope as well as the note inside. It was harassing in nature and had several phrases that the victims felt were threatening in nature. He wrote that he wishes death on her daughter and tells her she's about to croak soon. Written RIP on it. He warned her to be extra safe and that anything is possible, again referencing the letters RIP. He wrote that her life is

very short. He threatened to murder [B.D.], as well as others, from jail in which the charges were brought forth. He indicated he is unable and fears that he may do her, [B.D.], and her family harm, if released. She found the letter to be both intimidating and harassing.

He had been warned many times by Magistrate Olasz not to have any contact with the witnesses in the case. So based on that, the officer filed charges and that would be the sum and substance of the Commonwealth's case.

N.T. Guilty Plea Hearing, 1/22/15, at 53-54, 55-57, 57-60, 60-62, 63-64.

On January 22, 2015, Appellant pleaded guilty but mentally ill to the charges. That day, the trial court sentenced Appellant to serve an aggregate term of 10-years-and-three-months to 30 years in prison for his convictions. We affirmed Appellant's judgment of sentence on October 3, 2016. *Commonwealth v. Parker*, 159 A.3d 33 (Pa. Super. 2016) (unpublished memorandum) at 1-9.

On November 2, 2016, Appellant filed a timely, *pro se* PCRA petition and the PCRA court later appointed counsel to represent Appellant in the proceedings. Counsel then filed an amended PCRA petition on Appellant's behalf. The petition raised two claims for relief: 1) "trial counsel provided ineffective assistance of counsel for failing to investigate the contents and source of exculpatory evidence provided by [Appellant]" and 2) "[Appellant] is entitled to an evidentiary hearing and/or a new trial based upon after discovered evidence that is exculpatory in nature." Appellant's Amended PCRA Petition, 1/4/17, at 7 and 9.

As to the first claim, Appellant alleged that he provided his trial counsel with "letters that could be deemed exculpatory or for use at trial to impeach the credibility of the witness/victims in his proceedings." *Id.* at 8. Appellant's written petition did not summarize the letters, identify the alleged authors, or specify how the letters could be deemed exculpatory. Nevertheless, he attached two letters to his PCRA petition. One of the letters contains nothing that could remotely be considered exculpatory. The second of the letters was postmarked December 5, 2013, signed by a person named S.P. (presumably, the same S.P. who is Appellant's estranged wife and one of the victims in this case), and addressed to Appellant. Within the letter, S.P. allegedly wrote:

> p.s.s. whenever I get calls on you should call when S.R.
> gets home from school so you can talk 2 your kids and thats
> it. There is no need 2 talk 2 me . . . the courts dont no I
> lied about them charges on you anywa fuck you

Letter, attached as "Exhibit 1" to Appellant's Amended PCRA Petition, at 2.[1]

---

[1] No evidentiary hearing occurred in this case and this Court is (obviously) not equipped to make findings of fact. Nevertheless, we note that the words "the courts dont no I lied about them charges on you anywa" appear to be from a different handwriting source than the remainder of S.P.'s letter. *See* Letter, attached as "Exhibit 1" to Appellant's Amended PCRA Petition, at 1-2. Indeed, a superficial review certainly makes it appear as though Appellant wrote the words "the courts dont no I lied about them charges on you anywa." *Compare id.* *with* "Inmate's Request to Staff Member," 7/22/13, at 1.

Appellant claimed that his "[t]rial counsel provided ineffective assistance . . . by failing to properly investigate [the] exculpatory evidence." Appellant's Amended PCRA Petition, 1/4/17, at 9.

With respect to Appellant's second claim, Appellant alleged that he is "entitled to an evidentiary hearing and/or a new trial based upon after discovered evidence that is exculpatory in nature." *Id.* Appellant explained the basis of his claim in the following manner:

> [Appellant] contends that he has two additional witnesses that would testify that in fact the victim/witnesses in his above listed cases were fabricating the incident as retaliation or retribution on [Appellant]. The two witnesses, one being [Appellant's] mother, who would indicate to the court that the victim/witness was "bragging about setting up" [Appellant] with a fake letter. The second witness would provide exculpatory evidence in that the letter provided as evidence against [Appellant] was actually penned by someone other than [Appellant] and used against him as "payback." These additional witnesses would provide more than impeachment evidence as their testimony goes to the heart of the matter surrounding [Appellant's] cases.

*Id.* at 11.

However, Appellant did not identify the alleged "second witness" and Appellant did not include a "signed certification" from his mother, "stating her name, address, date of birth and substance of testimony." *See* 42 Pa.C.S.A. § 9545(d)(1).

On February 8, 2017, the PCRA court provided Appellant with notice that it intended to dismiss the petition in 20 days, without holding a hearing. PCRA Court Notice, 2/8/17, at 1; *see also* Pa.R.Crim.P. 907(1). The PCRA

court finally dismissed Appellant's PCRA petition on March 8, 2017 and Appellant filed a timely notice of appeal. PCRA Court Order, 3/8/17, at 1. Appellant raises two claims on appeal:

> [1.] Did the [PCRA] court err in denying [Appellant's PCRA] petition without a hearing because trial counsel provided ineffective assistance of counsel for failing to investigate the contents and source of known exculpatory evidence provided by [Appellant]?
>
> [2.] Did the [PCRA] court err in denying [Appellant's PCRA] petition without a hearing because [Appellant] is entitled to an evidentiary hearing and/or a new trial based upon after discovered evidence that is exculpatory in nature and which [Appellant's] prior counsel failed to raise?

Appellant's Brief at 4.

Appellant claims that the PCRA court erred when it dismissed his PCRA petition without holding an evidentiary hearing. Appellant first claims that he was entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to investigate the "contents and source of known exculpatory evidence provided by" Appellant. *Id.* This claim fails.

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining

process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding

- 10 -

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some internal quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). Yet, where the ineffectiveness of counsel is claimed in connection with the entry of a guilty plea, a petitioner may only obtain relief where "counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating [the] entry of an unknowing, involuntary, or unintelligent plea." *Commonwealth v. Moser*, 921 A.2d 526, 530 n.3 (Pa. Super. 2007) (*en banc*) (internal citations and quotations omitted). As we have explained:

> once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.

*Commonwealth v. Stork*, 737 A.2d 789, 791 (Pa. Super. 1999) (internal quotations, citations, and corrections omitted), *quoting Commonwealth v. Myers*, 642 A.2d 1103, 1105 (Pa. Super. 1994). "To prove prejudice, [an] appellant must prove he would not have [pleaded] guilty and would have

achieved a better outcome at trial." ***Commonwealth v. Fears***, 86 A.3d 795 (Pa. 2014) (internal quotations and citations omitted).

Moreover,

> With regard to the voluntariness of a plea, a guilty plea colloquy must "affirmatively demonstrate the defendant understood what the plea connoted and its consequences." ***Commonwealth v. Lewis***, 708 A.2d 497, 501 (Pa. Super. 1998). Once the defendant has entered a guilty plea, "it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." ***Commonwealth v. Bedell***, 954 A.2d 1209, 1212 (Pa. Super. 2008). Competence to plead guilty requires a finding that the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa. Super. 2007).

***Commonwealth v. Willis***, 68 A.3d 997, 1002 (Pa. Super. 2013). "A defendant is bound by the statements which he makes during his plea colloquy." ***Commonwealth v. Lewis***, 708 A.2d 497, 502 (Pa. Super. 1998) (internal citation omitted). "A defendant may not assert grounds for withdrawing the plea that contradict statements made when he pled guilty." ***Id.***

With respect to a claim that counsel was ineffective for failing to investigate, we note:

> The failure to investigate presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. Importantly, a petitioner still must demonstrate prejudice. To demonstrate prejudice where the allegation is the failure to

- 12 -

interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial.

In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Pander*, 100 A.3d 626, 638–639 (Pa. Super. 2014) (internal quotations and citations omitted).

Finally, a PCRA petitioner is not automatically entitled to an evidentiary hearing on his petition. Specifically, a PCRA petition may be dismissed without a hearing if the PCRA court "is satisfied from [its review of the petition] that there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1). However, when the PCRA petition raises material issues of fact, the PCRA court "shall order a hearing." Pa.R.Crim.P. 908(A)(2). Thus, "[t]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v.*

*Paddy*, 15 A.3d 431, 442 (Pa. 2011) (internal quotations and citations omitted).

On appeal, Appellant claims that his trial counsel was ineffective for "failing to investigate" the "exculpatory evidence" that he provided to counsel.  Appellant's Brief at 16.  Neither within Appellant's brief to this Court nor in his PCRA petition does Appellant:  summarize the letters, identify the alleged authors, specify how the letters could be deemed exculpatory, or explain what counsel could have done to further "investigate" the letters or the authors of the letters.  *See* Appellant's Brief at 16-17; Appellant's Amended PCRA Petition, 1/4/17, at 8-9.

Indeed, from this Court's review, there is only one phrase in the letters that could possibly be deemed "exculpatory":  when S.P. (allegedly) wrote "the courts dont no I lied about them charges on you anywa fuck you." Letter, attached as "Exhibit 1" to Appellant's Amended PCRA Petition, at 2. However, Appellant admits that he provided his trial counsel with this letter – and Appellant does not explain to this Court what counsel could or should have done to further investigate this statement or S.P.  *See* Appellant's Brief at 16-17.  Further, and fatally to Appellant's claim, Appellant did not plead in his PCRA petition (and Appellant does not argue on appeal) that, if counsel would have further investigated S.P.'s alleged statement, he would not have pleaded guilty.  *See* Appellant's Brief at 16-17; Appellant's Amended PCRA Petition, 1/4/17, at 8-9.  Therefore, Appellant cannot, as a matter of law,

prevail on his ineffective assistance of counsel claim. *Fears*, 86 A.3d at 807 ("[for a petitioner t]o prove [that he was] prejudice[d by counsel's ineffective assistance in connection with the entry of a guilty plea, the petitioner] must prove he would not have [pleaded] guilty and would have achieved a better outcome at trial") (internal quotations and citations omitted). Appellant's first claim on appeal thus fails.

Second, Appellant claims that the PCRA court erred in dismissing his petition because "he has two additional witnesses that would testify that [] the victim/witnesses in his above listed cases were fabricating the incident as retaliation or retribution on [] Appellant." Appellant's Brief at 20. According to Appellant, the testimony of the "two additional witnesses" constitutes after discovered evidence, which entitles him to a new trial. *Id.* This claim fails.

The PCRA provides an avenue for relief for individuals who are able to plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). "To establish such a claim, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict."

***Commonwealth v. Cox***, 146 A.3d 221, 228 (Pa. 2016) (internal citations and quotations omitted).

The PCRA court ably explained why Appellant's claim fails:

> Appellant asserted in his PCRA petition that he had two witnesses, one being his mother and another witness who is not identified, who would testify that his estranged wife fabricated the incidents to retaliate against Appellant. Appellant did not provide any such witness statements with his PCRA [petition], did not specify when the witness allegedly became aware of the alleged fabrications[,] or which incident or incidents were supposedly fabricated. Appellant [thus] fails the first prong, as he [] failed to establish that the evidence could not have been obtained prior to January 22, 2015 by the exercise of due diligence. . . .
>
> Further[,] Appellant's PCRA petition failed to comply with 42 [Pa.C.S.A.] § 9545(d), which requires a signed certification as to each proposed witness including the witness's name and the substance of that witness's testimony as well as any documents material to that witness's testimony. 42 [Pa.C.S.A.] § 9545(d). The same provision states that "[f]ailure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible." ***Id.*** [The PCRA] court deemed the witness's testimony inadmissible and correctly dismissed Appellant's PCRA petition without a hearing.

PCRA Court Opinion, 8/4/17, at 5 (some internal capitalization omitted).

We agree with the PCRA court's cogent analysis and conclude that Appellant's second claim on appeal fails.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/27/2018